## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Southern Division

| | | |
|---|---|---|
| SUSAN LANDESBURG,[1] | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil No. TMD 14-1265 |
| v. | * | |
| | * | |
| | * | |
| CAROLYN W. COLVIN, | * | |
| Acting Commissioner of Social Security, | * | |
| | * | |
| Defendant. | * | |

\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM OPINION GRANTING PLAINTIFF'S
## ALTERNATIVE MOTION FOR REMAND

Susan Landesburg ("Plaintiff") seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her application for child's disability benefits under Title II of the Social Security Act.  Before the Court are Plaintiff's Motion for Summary Judgment and alternative motion for remand (ECF No. 25) and Defendant's Motion for Summary Judgment (ECF No. 30).[2]  Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled.  No hearing is necessary.  L.R. 105.6.  For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 25) is **GRANTED**.

---

[1] Although Plaintiff filed her complaint as Susan "Landesburg," her last name throughout the administrative transcript appears as "Landesberg," "Landsburg," or "Landsberg."

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002).  For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

**I**

**Background**

Born in 1951, Plaintiff applied for child's disability benefits on March 27, 2008, alleging disability beginning on September 15, 1966, due to dizziness, agoraphobia, fibromyalgia, and arthritis.  R. at 32, 34, 128.  The Commissioner denied Plaintiff's application initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 26-28, 43, 45-47, 49-51.  On April 5, 2010, ALJ C.J. Sturek held a hearing in Washington, D.C., at which Plaintiff and a vocational expert ("VE") testified.  R. at 284-98.  On July 13, 2010, the ALJ issued a decision finding Plaintiff not disabled before attaining the age of 22.  R. at 29-37.  On July 8, 2011, the Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision, and remanded the case for further proceedings.  R. at 38-42.

On July 6, 2012, the ALJ held a supplemental hearing at which Plaintiff and another VE testified.  R. at 249-83.  On July 27, 2012, the ALJ issued a decision again finding Plaintiff not disabled before attaining the age of 22.  R. at 11-25.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on February 21, 2014.  R. at 4-8.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On April 15, 2014, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

## <u>Summary of Evidence</u>

The period between 1969 and 1973 when Plaintiff was 18 to 22 years old is relevant here

(R. at 254, 259).  *See* 42 U.S.C. § 402(d); 20 C.F.R §§ 404.102, 404.350(a)(5).

**A.     State Agency Consultants**

On July 25, 2008, K. Wessel, Ed.D., a state agency consultant, found insufficient

evidence of a mental impairment before Plaintiff attained the age of 22.  R. at 196-210.

**B.     Third-Party Testimony**

The ALJ reviewed in his decision the following statements from third parties:

> [Plaintiff's] neighbor from approximately 1968 to 1980, Joan E. Kelly, provided a statement, dated April 1, 1999, in which she indicated that [Plaintiff] was "almost reclusive, rarely leaving their apartment or the building," and that she "suffered from agoraphobia."  Ms. Kelly recounted that [Plaintiff] was unable to even go to the laundry room in their apartment building; that she would quickly return home upon venturing out of the building with her family; that her "few friends and neighbors," as well as her Rabbi, would visit her in the home; and that, when she would give [Plaintiff] rides on occasion, she seemed tense, anxious, and short of breath [R. at 154.]

> Marty Cooper, a friend of [Plaintiff] since age 16, stated, in a letter dated May 1, 1998, that [Plaintiff's] agoraphobia and other health problems, made it "impossible" for her to leave her home [R. at 153].  The undersigned notes that there are three statements of record from [Plaintiff's] older brother, Phil Landesberg, in support of his sister's claim[,] none of which mention[s] agoraphobia, anxiety, or ulcerative colitis[,] instead, referencing respiratory problems and lack of stamina [R. at 151, 156, 170].

R. at 18.

**C.     Plaintiff's Testimony**

In his decision, the ALJ reviewed Plaintiff's allegations:

> [Plaintiff] testified at the hearing that she developed agoraphobia and anxiety as a child, secondary to a lack of socialization that resulted from being physically ill, and, for the most part, quarantined in her home; and that she has suffered with these impairments ever since.  She stated that her family doctor, Dr.

Friedman, who is deceased, and for whom there is no treatment record, labeled her as agoraphobic, but did not want to indicate as much in her treatment record for fear that it might stigmatize her too much. [Plaintiff] endorsed symptoms including trouble concentrating and remembering, fear of leaving her home, unexpected panic attacks, difficulty sleeping, and crying spells.

[Plaintiff] also admitted that she did not receive psychiatric treatment or hospitalization during the period in question. She stated that she was put on a medication at one point, but that it made her depressed and suicidal; and that tranquilizers were ineffective.

[Plaintiff] stated, in a letter dated June 13, 2008, that she suffered from significant stomach problems which would leave her "doubled up" in pain, as well as cause bleeding, and that she was diagnosed as having ulcerative colitis [R. at 155].

R. at 18; *see* R. at 259-81. At the hearing, Plaintiff testified that, between the ages of 18 and 22, she spent eight to ten hours a day lying down because of her impairments. R. at 269-70.

**D.    VE Testimony**

The VE testified that an individual would not be employable if that individual's maximum ability to perform on a job only reached 80% of others' performance. R. at 281. Plaintiff could not have performed any work between 1969 and 1973 if the ALJ accepted as true Plaintiff's testimony that she had to lie down during the day during that time period. R. at 281-82.

## III

## Summary of ALJ's Decision

On July 27, 2012, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of September 15, 1966; and (2) had an impairment or a combination of impairments considered to be "severe" before attaining the age of 22; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1, before attaining the age of

22; and (4) had no past relevant work before attaining the age of 22; but (5) could perform other work in the national economy before attaining the age of 22.  R. at 17-24.  The ALJ thus found that she was not disabled before attaining the age of 22.  R. at 24.

In so finding, the ALJ found that, before attaining the age of 22, Plaintiff had the RFC to perform the full range of sedentary work.[3]  R. at 20.  The ALJ "did not find that the evidence of record provided a basis for the establishment of agoraphobia, anxiety, and ulcerative colitis as medically[]determinable impairments during the period in question."  R. at 20.  "This is because there is no medical evidence, contemporaneous or otherwise, consisting of signs, symptoms, and laboratory findings establishing the same."  R. at 20. The ALJ found that Plaintiff's medically determinable "impairments could have been reasonably expected to produce the alleged symptoms; however, [her] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment."  R. at 21.  "The evidence of record as a whole, along with a great deal of deference to [Plaintiff's] subjective allegations, supports a finding that she was generally limited to sedentary work during the period in question, secondary to shortness of breath, fatigue, and allergy-related symptoms."  R. at 21.  "[Plaintiff] did, in fact, suffer from significant respiratory problems and related fatigue during the period in question.  Therefore, the undersigned found that [Plaintiff] would have been limited to work at a sedentary exertional level."  R. at 23.

**IV**

**Disability Determinations and Burden of Proof**

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. § 404.1567(a).

be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work

activities.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[4]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.   20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).  RFC is a measurement of the most a claimant can do despite his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The Commissioner also will consider certain non-medical

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. §§ 404.1521(b), 416.921(b).  These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

### Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42

U.S.C. § 405(g).  Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  *Hancock*, 667 F.3d at 472.  Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."  *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).  When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Among the arguments raised by Plaintiff is her contention that the ALJ "failed to provide any proper rationale as to why he did not find [her] statements concerning the intensity, persistence, and limiting effects of these symptoms credible."  Pl.'s Mem. Supp. Mot. Summ. J. 11, ECF No. 25-1.  According to Plaintiff, the ALJ "determined that [she] was capable of performing the full range of sedentary work, without proper consideration of the additional limitations that frequent respiratory problems and fatigue would cause and how those would clearly prevent the full range of sedentary work on a steady and consistent basis."  *Id.* at 11-12. "[I]f [Plaintiff's] testimony, as supported by the medical record, was fully credible, there would have been no work available to [Plaintiff] during the relevant period, based primarily on

[Plaintiff's] testimony that due to weakness and limitation she would be required to lie down during the day." *Id.* at 12 (citing R. at 281-82). The ALJ "erred by failing to even note this testimony of the Vocational Expert anywhere in his decision, almost as if it never occurred." *Id.* (citing R. at 14-25). Defendant maintains, however, that "[a]n ALJ need not wholly accept an individual's statements. He may find that some are to be credited, and others not." Def.'s Mem. Supp. Mot. Summ. J. 10, ECF No. 30-1. "[T]he ALJ properly found that Plaintiff's allegations supported a finding that she was limited to sedentary work, but that her allegations regarding more extreme limitations were not credible. That conclusion was supported by substantial evidence." *Id.* at 11. For the reasons stated below, the Court remands this matter for further proceedings.

The ALJ found that Plaintiff's medically determinable "impairments could have been reasonably expected to produce the alleged symptoms; however, [her] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." R. at 21. An ALJ's failure to evaluate a claimant's credibility before analyzing the RFC, however, is harmful error and requires remand, unless the ALJ "properly analyzed credibility elsewhere." *Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015). Rather, an ALJ should compare a claimant's functional limitations from pain and subjective complaints to the other evidence in the record, not to the claimant's RFC, and consider the claimant's pain as part of the ALJ's analysis of RFC. *See id.*

Here, the ALJ found that Plaintiff "was generally limited to sedentary work during the period in question, secondary to shortness of breath, fatigue, and allergy-related symptoms." R. at 21. Because Plaintiff "did, in fact, suffer from significant respiratory problems and related fatigue during the period in question," the ALJ "found that [she] would have been limited to

work at a sedentary exertional level." R. at 23.  The ALJ did not, however, make any findings as to the effect of Plaintiff's limitations on her ability to perform work-related functions or her ability to perform them for a full workday.  *See Mascio*, 780 F.3d at 636-37.  Moreover, Plaintiff testified that, during the relevant period, she needed to lie down eight to ten hours a day (R. at 270), which, if fully credited, would preclude her from all work (R. at 282).  "Nowhere, however, does the ALJ explain how he decided which of [Plaintiff's] statements to believe and which to discredit, other than the vague (and circular) boilerplate statement that he did not believe any claims of limitations beyond what he found when considering [Plaintiff's] residual functional capacity." *Id.* at 640.

Remand is appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* at 636 (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)).  Because the Court is "left to guess about how the ALJ arrived at his conclusions on [Plaintiff's] ability to perform relevant functions," *id.* at 637, remand for further proceedings under the fourth sentence of 42 U.S.C. § 405(g) thus is warranted in this case.  The Court need not address Plaintiff's other arguments, including those raised in her Motion for Leave to Add New and Material Exhibits to the Record and to Amend Motion for Summary Judgment (ECF No. 31).  *See, e.g.*, *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 345 n.6 (4th Cir. 2012).  In any event, because either party may introduce additional evidence on remand, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), Plaintiff's Motion for Leave to Add New and Material Exhibits to the Record and to Amend Motion for Summary Judgment (ECF No. 31) is **DENIED AS MOOT**.

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 30) is **DENIED**.  Plaintiff's Motion for Summary Judgment (ECF No. 25) is **DENIED**.  Plaintiff's alternative motion for remand (ECF No. 25) is **GRANTED**.  Because of inadequate analysis, Defendant's final decision is **REVERSED IN PART** under the fourth sentence of 42 U.S.C. § 405(g).  This matter is **REMANDED** for further proceedings consistent with this opinion.  Plaintiff's Motion for Leave to Add New and Material Exhibits to the Record and to Amend Motion for Summary Judgment (ECF No. 31) thus is **DENIED AS MOOT**.  A separate order shall issue.

Date: September 18, 2015                                                  /s/

                                                    Thomas M. DiGirolamo
                                                    United States Magistrate Judge